UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,                    )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )        No. 4:05 CR 75 RWS
                                             )                        DDN
DAVID LEROY WILSON,                          )
                                             )
                Defendant.                   )

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

        This action is before the court upon the pretrial motions of the
parties which were referred to the undersigned United States Magistrate
Judge pursuant to 28 U.S.C. § 636(b).  An evidentiary hearing was held
April 1, 2005.  Counsel requested leave to file post-hearing memoranda.
The matter was taken under submission on April 20, 2005.

        Defendant David Wilson has moved to suppress physical evidence.
(Doc. 9.)  From the evidence adduced at the hearing, the undersigned
makes the following findings of fact and conclusions of law:

**FACTS**

        1.    On July 1, 2004, Police Officers Andrew McClure and Tim Bone
were in uniform on duty as members of the Ferguson, Missouri, Police
Department's Neighborhood Enforcement Team (NET).  One duty of the NET
is to execute Ferguson municipal court arrest warrants.  On July 1, they
were provided a list of individuals with outstanding warrants in
Ferguson.  McClure chose to serve Mark Anthony because he was near the
top of the alphabetical list.  The officers went to the address listed
for Anthony, 1015 Chambers Road in Ferguson.

        2.    After Officers McClure and Bone arrived at 1015 Chambers
Road, McClure walked to the front door and knocked.  Defendant David
Wilson opened the front door.  Officer McClure asked whether Mark
Anthony was home.  Wilson said, "No.  He moved away."  McClure asked
Wilson to produce identification to show that he was not Anthony.
Wilson produced identification that he was David Wilson, stating "I'm
not Mark Anthony.  Here's my i.d."  As required by department procedure,
Bone and McClure ran a computer search for arrest records and warrant
status with Wilson's identification.  This search provided McClure and
Bone with information that Wilson was a convicted felon.

        3.    With Wilson standing just inside the threshold of the front
door of the residence, McClure asked if he and Bone could enter to look

for Anthony. Wilson voluntarily said he had no problem with the officers doing so.

4. After entering, Officer Bone found another person inside the residence. Out of concern for the officers' safety, McClure checked the living room couch for weapons, found none, and then directed Wilson and his friend to sit on the couch while the officers looked for Anthony. Also out of a concern for safety, Officer McClure checked the large drawer in a coffee table situated within reach of Wilson and his friend. Inside the drawer McClure found two small bags of marijuana. McClure never intended to arrest them for the small amount of marijuana. Officer McClure also patted Wilson down to be sure he had no weapon on him.

5. Then Officer McClure asked Wilson again whether the officers could look for Anthony. Wilson answered in the affirmative, "Not a problem."

6. During this period of time, Officer Bone ran a computer search of Wilson's friend's identification and found that there was an active arrest warrant for him.

7. Officer McClure then went into Wilson's bedroom and opened a walk-in closet. There he saw two bullet-proof vests in plain view hanging in the closet. He removed the vests, returned to the living room, and asked Wilson why the vests were in his possession. Wilson said he used the vests for paintballing. McClure placed the vests on a table in the living room and returned to Wilson's bedroom to continue his search for Anthony.

8. After he returned to the bedroom, McClure saw a shotgun in plain view on the floor between Wilson's waterbed and the wall. McClure looked in this area because it was large enough to conceal a person. McClure seized the firearm and racked it to see if it was loaded. This procedure made a loud recognizable noise and Wilson yelled from the living room that the firearm was his mother's and that she leaves it in his room. McClure seized the shotgun, because he knew it was illegal for Wilson, a convicted felon, to possess a firearm.

9. During the search of the residence, McClure and Wilson remained friendly. Officer McClure did not yell, unholster his weapon, threaten Wilson, make any promise to him, or act in any way to coerce him to consent to the search for Anthony.

10. On July 1, 2004, David Wilson was 27 years of age. He was employed, had acquired a General Education Diploma, had had prior

experience with the police, and had been convicted of first degree assault on two occasions.

## DISCUSSION

The items seized from the residence should not be suppressed. Defendant argues that Officer McClure searched his residence in violation of the Fourth Amendment, because McClure had no search warrant and defendant did not consent to the search. It is undisputed that the police did not have a search warrant for Wilson's residence when Officer McClure searched it for fugitive Anthony. However, a warrantless search is reasonable under the Fourth Amendment, if it is authorized by the voluntary consent of someone who has authority over the place to be searched. Illinois v. Rodriquez, 497 U.S. 177, 179, 189 (1990); Davis v. United States, 328 U.S. 582, 594-94 (1946); cf., Payton v. New York, 445 U.S. 573, 576 (1980).

Whether consent was voluntarily given depends upon the totality of the circumstances. United States v. Heath, 58 F.3d 1271, 1276 (8th Cir.), cert. denied, 516 U.S. 892 (1995). Consent is voluntary, if it is the product of an "essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); United States v. Armstrong, 16 F.3d 289, 295 (8th Cir. 1994); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000).

In the case at bar, defendant argues that his consent to the search was not voluntary, because McClure had stood chest-to-chest with him in the doorway in an intimidating manner. The undersigned does not credit defendant's hearing testimony to this effect. Wilson was familiar with the criminal justice system, having had police contact and a felony conviction before July 1, 2004. However, because he knew that the fugitive the officers sought was not there, he felt he had no criminal liability to fear by their searching the residence. If the police were antagonistic to Wilson as he testified, it is more likely that he would have been prosecuted to some extent for the albeit small amount of marijuana the officers found in the residence.

Defendant's statements to the police should not be suppressed. The government has the burden of establishing the admissibility of Wilson's statements by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 169 (1986). The statements, whether made in custody or not, must be voluntary. Statements are voluntary, if they are not the result of government overreaching, such as coercion, deception, or

intimidation.  Id. at 169-70; United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988).  All of the statements Wilson made before and after he was advised of his Miranda rights were voluntary.  None of his statements were coerced.

It is the government's burden to prove that those statements by defendant, which were made during police interrogation while the defendant was in custody, must not only be voluntary, but they also must have been preceded by an advice of rights, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966), and the defendant must have knowingly and voluntarily waived the Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

A person is "in custody" for Miranda purposes if a reasonable person in the defendant's circumstances would believe that he was not free to go about his business.  Florida v. Bostick, 501 U.S. 429, 436 (1991); Berkemer v. McCarthy, 468 U.S. 420, 442 (1984); United States v. Axsom, 289 F.3d 496, 501 (8th Cir. 2002).

Clearly, the credible evidence established that, while the officers and defendant were at the front door, no reasonable person would have believed he could not go about his own business.  The officer asked for defendant's consent to enter the residence to search for a fugitive. Defendant had had prior experience with police and voluntarily consented to their entry into his residence.

During the lawful search of defendant's residence, the officers were authorized to take reasonable precautions to protect themselves by detaining defendant and his companion in a secure place.  See Michigan v. Summers, 452 U.S. 692, 701-02 (1981).  This detention involved only a minimum intrusion into defendant's freedom of movement when compared to the more intrusive, consensual search of his residence for a fugitive.  Id.

While seated on the couch, defendant made a statement in response to the officer's question.  When asked why he had the bullet-proof vests, defendant said they were for paintballing.  This question was asked without the police having advised defendant of his Miranda rights. Since this statement was made in response to a question, the only issue presented is whether or not defendant was then in custody.

The Eighth Circuit has described six common factors with which to analyze whether someone is in custody for Miranda purposes:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so,

or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning. [<u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990).]

The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody. We have emphasized these six indicia of custody are representative and are not exclusive. A finding of custody does not require the factual circumstances of a case to present all indicia; and a particularly strong showing of one factor may compensate for a lesser or non-existent showing of another factor. <u>Id.</u>

<u>United States v. Axom</u>, 289 F.3d 496 (8th Cir. 2002).

In the case at bar, regarding the first factor, before Officer McClure asked defendant why he had the vests, he knew he was not the object of the officers' interest. Further, defendant had not been told the questioning was voluntary, he had not been told he was free to leave, and he had not been told he was not considered under arrest. He was just told to sit on the couch while the officers searched for the fugitive. Regarding the second factor, because he was restricted to the couch, defendant did not have unrestrained freedom of movement; that was the point of the reasonable security measure taken by the officers during the search. And regarding the third factor, defendant did not initiate the question or the contact with the police. Thus, the first three factors do not mitigate the police presence and control.

The fourth factor, also, is not present. The police did not engage in any strong arm tactic or deception during the questioning or even in their investigation of Anthony's presence. Neither is the fifth factor present. Defendant voluntarily consented to the police search, he was not handcuffed, and the police did not consider important the presence of the small amount of marijuana in the coffee table. Thus, the atmosphere was not police dominated. Regarding the sixth factor, although defendant was ultimately arrested at the end of the contact with the police, the arrest did not occur until later, after the firearm

was found.

On balance, given the consensual nature of the police presence inside the residence and defendant's prior experience with law enforcement, the undersigned concludes that, when he was asked about the vests, defendant was not in custody for <u>Miranda</u> purposes.

The statements made by defendant that the firearm was his mother's and that she left it in his room should not be suppressed. These statements were not made in response to police interrogation, but only in response to his hearing the firearm being physically secured by the officer. The officer had a legitimate security purpose in clearing the firearm. Under the circumstances of this case, this act was not reasonably designed to elicit an incriminating statement from defendant. <u>See</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980).

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress physical evidence (Doc. 9) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

<u>**ORDER SETTING TRIAL DATE**</u>

As directed by the District Judge, this matter is set for a jury trial on the docket commencing June 13, 2005 at 9:00 a.m.

_David D. Noce_

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed this day, April 26, 2005.